IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| BLANCA GOMEZ, Next Friend of NAXILEY RAE LYNN ZAMORA, NAILEXY YVONNE-DOMITILA ZAMORA, NAILEA JACQUELINE ZAMORA, and ARIANI NAOMI ZAMORA, Minors, Individually and as Heirs of the Estate of JOHN RAY ZAMORA, Deceased,<br><br>        Plaintiffs,<br><br>AND<br><br>YVONNE MICHELLE ZAMORA, Individually and as Heir to the Estate of JOHN RAY ZAMORA, Deceased<br><br>        Intervenor-Plaintiff,<br><br>v.<br><br>CITY OF LYFORD, LYFORD POLICE DEPARTMENT, WILLACY COUNTY, and WILLACY COUNTY SHERIFF'S DEPARTMENT,<br><br>        Defendants. | CIVIL ACTION NO. 1:22-CV-36<br>(Jury Trial Requested) |

## PLAINTIFFS AND INTERVENOR-PLAINTIFF'S JOINT RESPONSE TO THE CITY OF LYFORD AND LYFORD POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs and Intervenor-Plaintiff, requesting this Honorable Court to deny City of Lyford and Lyford Police Department's Motion for Summary Judgment (Dkt. 56) and in support thereof provide the following:

i

# INTRODUCTION

This case involves Constitutional rights violations by Defendants Willacy County, Willacy County Sheriff's Department, City of Lyford, and Lyford Police Department. The violations caused the death of John Ray Zamora leaving four minor children without their father. Willacy County and Willacy County Sheriff's Department have resolved this dispute and have been dismissed. City of Lyford and Lyford Police Department are the remaining defendants.

## TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................II
**TABLE OF CONTENTS** ......................................................................................III
**TABLE OF AUTHORITIES** ................................................................................IV
**EXHIBITS IN SUPPORT OF RESPONSE**.........................................................V
**SUMMARY OF ARGUMENTS** ...........................................................................1
**RESPONSE TO MOTION FOR SUMMARY JUDGMENT ARGUMENTS** .......1
    **1.   OFFICER GARCIA VIOLATED JOHN RAY ZAMORA'S FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS.** ............................................1
    **2.   THE CITY OF LYFORD AND LYFORD POLICE DEPARTMENT ADOPTED A WIDESPREAD CUSTOM TO UNDERSTAFF AND UNDERPAY OFFICERS AS WELL AS TO INADEQUATELY TRAIN THE DEPARTMENT CAUSING THE CONSTITUTIONAL RIGHTS DEPRIVATION.** ...................................................................................3
    **3.   PLAINTIFFS AND INTERVENOR'S CLAIMS ARE NOT BARRED BY QUALIFIED IMMUNITY BECAUSE THE RIGHT WAS CLEARLY ESTABLISHED.** .............................................................................8
**CONCLUSION AND PRAYER** ............................................................................9

## TABLE OF AUTHORITIES

**CASES**

*Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) ................... 1, 3, 9

*Anderson v. Creighton*, 640 107 S. Ct. 3034, 3039 (1987) ............................................................... 8

*Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) .......................................................................... 6

*Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ................................................................... 8

*Burns v. City of Galveston*, 905 F.2d 100, 104 (5th Cir. 1990) ..................................................... 7

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ............................................................. 6

*Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) .............................. 1

*Dyer v. Houston*, 964 F.3d 374, 382-83 (5th Cir. 2020) ........................................................ 2, 8, 9

*Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) ............................................................... 1, 3, 9

*Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ............................. 1

*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) .................. 1

*Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) .................................................... 3

*Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1007 (E.D. Tex. 1997) ................................... 6

*Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986) ....................... 8

*Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) ..................................................................... 8

*Nerren v. Livingston Police Department*, 86 F.3d 469, 470-71 (5th Cir. 1996) ....................... 3, 9

*Nuss v. City of Seven Points*, 2020 U.S. Dist. LEXIS 197040* (N.D.Tex. 2020) ......................... 6

*Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) ........................................................................ 8

*Shepard v. Hansford County*, 110 F. Supp. 3d 696, 718 (N.D.Tex. 2015) ................................ 4, 6

*Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) ...................................... 1, 8, 9

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) ............................................3

*Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) .........................................................3

## EXHIBITS IN SUPPORT OF RESPONSE

Incident Report of Officer Garcia, Exhibit 1

Autopsy Report, Exhibit 2

Expert Report of Keith Howse, Exhibit 3

Deposition Testimony of Keith Howse, Exhibit 4

0

## SUMMARY OF ARGUMENTS

City of Lyford and Lyford Police Department had a custom and policy of understaffing and underfunding the police department as well as inadequately training officers. This custom and policy was the moving force behind Officer Garcia's violation of John Ray Zamora's Fourteenth Amendment Constitutional right to have serious medical needs appropriately addressed.

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT ARGUMENTS

**1.  Officer Garcia Violated John Ray Zamora's Fourteenth Amendment Constitutional Rights.**

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty., Tex.,* 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). A plaintiff can show deliberate indifference by showing that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (quoting *Easter v. Powell*,

1

467 F.3d 459, 464 (5th Cir. 2006)).

The Fifth Circuit has found such violations when officers failed to provide medical attention. *See Dyer v. Houston*, 964 F.3d 374, 382-83 (5th Cir. 2020). In *Dyer*, the plaintiff-detainee had ingested LSD and was in a drug induced psychosis. *Id.* At 377-78. Officers observed the plaintiff-detainee's erratic behavior. *Id.* at 378. The plaintiff-detainee slammed his head multiple times in the patrol car. *Id.* The plaintiff-detainee ultimately died as a result of the blunt-force trauma to his head. *Id.* 379. The Fifth Circuit ruled that a reasonable trier of fact could find that the officers were aware the plaintiff-detainee, in the grip of a drug-induced psychosis, struck his head violently against the interior of the patrol car and thereby sustained severe head trauma. *Id.* at 381. Thus, the Fifth Circuit held there was enough evidence that the officers were aware of a risk of injury to the plaintiff-detainee that they did nothing to alleviate. *Id.* at 382.

Like the officers in *Dyer*, Officer Garcia failed to provide medical attention to Mr. Zamora. Officer Garcia was advised that Mr. Zamora ingested drugs and had a history of using cocaine. Officer Garcia witnessed Mr. Zamora running towards him, acting erratically, and saying that he was being followed when he was not.[1] The autopsy report showed Mr. Zamora ultimately died from, "Cardiorespiratory Arrest While Under the Influence of Multiple Drugs (Excited Delirium Syndrome)."[2] Thus, there is clearly enough evidence that Officer Garcia was aware of a risk of injury to plaintiff-detainee that Officer Garcia did nothing to alleviate — similar to *Dyer*.

---

[1] Exhibit 1; Officer Garcia's Report at 2

[2] Exhibit 2; Autopsy at 1.

2

The Fifth Circuit has repeatedly found such failures to provide needed medical attention are clear constitutional violations. *See Alderson v. Concordia Par. Corr. Facility,* 848 F.3d 415, 422-23 (5th Cir. 2017) (finding a violation when guard refused to provide prescribed antibiotics and painkillers for his broken ribs); *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam) (finding a constitutional violation when nurse refused to provide an inmate's prescribed medication for heart attacks); *Nerren v. Livingston Police Department*, 86 F.3d 469, 470-71 (5th Cir. 1996) (denying qualified immunity when officers rejected plaintiff's request for medical assistance despite knowing he was involved in a car accident).

**2.     The City of Lyford and Lyford Police Department Adopted a Widespread Custom to Understaff and Underpay Officers as well as to Inadequately Train the Department Causing the Constitutional Rights Deprivation.**

A plaintiff can establish a municipal policy by alleging: (1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or (3) even a single decision in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019).

To show widespread practices fairly represents municipal policy, a Plaintiff may demonstrate that there existed "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)).

Here, City of Lyford and Lyford Police Department adopted a widespread custom to: (1) understaff and underpay officers; and (2) inadequately train the department causing the deprivation of Mr. Zamora's Constitutional rights.

### A. Understaffing and Underpaying Lyford Police Department

Understaffing a police force can be a custom that is a moving force behind constitutional rights violation. *See Shepard v. Hansford County*, 110 F. Supp. 3d 696, 718 (N.D.Tex. 2015). In *Shepard*, a pretrial detainee committed suicide. *Id.* At 703. The sheriff knew that the county jail was understaffed. *Id.* At 718. He further knew that for a period of at least two years prior, jailers sometimes had trouble completing all duties as a result of the understaffing. *Id.* Given these facts, the court found that a reasonable jury could find that the county had an unwritten policy or practice of understaffing the jail. *Id.* The court further held that a reasonable jury could find that the county maintained this practice with deliberate indifference, because it was objectively obvious that the consequences of understaffing could include constitutional violations. *Id.*

Similar to Hansford County in *Shepard*, the City of Lyford and Lyford Police Department have an unwritten custom of routinely understaffing *and* underfunding Lyford Police Department. City of Lyford maintains this practice with deliberate indifference because it is objectively obvious that understaffing and underfunding Lyford Police Department could include constitutional violations.

In 2000, Lyford Police Chief Rene Joseph Leal was indicted for tampering with evidence.[3] Subsequently, two police officers quit, fearing the retaliation from the Chief for

---

[3] Admin, U. (2000, July 24). *Texas town's police chief indicted; fate of Department placed in limbo*. Maryland Daily Record. https://thedailyrecord.com/2000/07/24/texas-town8217s-police-chief-indicted-fate-of-department-placed-in-limbo/

4

helping with he investigation.[4] The other two officers quit for better job offers. In 2014, Lyford Police Chief Paul Campbell was terminated by city council after five years.[5] In 2015, the City of Lyford hired Andres Maldonado as the new Lyford Police Chief.[6] Less than five years later, Mr. Maldonado turned in his resignation during the summer of 2019 after being recruited by the sheriff's office.[7]

In 2019, following Mr. Maldonado's resignation, Lyford Police Department remained closed for months. In November 2019, James Harrison III was sworn in as the new Lyford Police Chief. However, Mr. Harrison resigned after less than one week.[8] In 2020, Lyford city officials hired Armin Martinez as the new Lyford Police Chief.[9] Police Chief Martinez stated his top priority was to bring the department up to state standards—insinuating that it was not.

A root cause of Lyford Police Department's constant turnover is the City of Lyford and Lyford Police Department's lack of funding for police department compensation, highlighted by the Department's 2019 closure.

During the closure, then Lyford Mayor Pro Tem Rick Salinas acknowledged that Lyford

---

[4] Stack, M. K. (2000, July 30). *Indictment leaves town without police dept.* The Seattle Times. https://archive.seattletimes.com/archive/?date=20000723&slug=4033095#:~:text=LYFORD%2C%20Texas%20%2D%20With%20the%20zing,windows%20of%20abandoned%20squad%20cars.

[5] News Staff (2014 December 24). *Lyford Police Chief terminated following meeting.* Valley Central. https://www.valleycentral.com/news/local-news/lyford-police-chief-terminated-following-meeting/

[6] Espinosa, E. (2015 January 7). *City of Lyford hires new police chief.* KVEO-TV. https://www.valleycentral.com/news/local-news/city-of-lyford-hires-new-police-chief/

[7] Marley, R. and Cole, A. (2019 October 31) *Lyford Police Department temporarily closed*  KVEO-TV. https://www.valleycentral.com/news/local-news/lyford-police-department-temporarily-closed/

[8] Cepeda, P. and Cole, A. (2019 November 20) *Lyford Police Department temporarily closed after new chief resigns.* Valley Central. https://www.valleycentral.com/news/local-news/lyford-police-department-temporarily-closed-after-new-chief-resigns/

[9] De Anda, M. (2020 February 14) *City officials name new Lyford police chief.* KRGV. https://www.krgv.com/news/city-officials-name-new-lyford-police-chief/

5

Police Department's salaries do not compare to other departments.[10] Mr. Salinas stated that most of the individuals Lyford city officials hire for Lyford Police Department are young and inexperienced. Moreover, Lyford Commissioner Albert Cavazos acknowledged that the pay the City of Lyford offers the Lyford Police Chief is difficult for qualified candidates to live on.

City of Lyford city council officials have publicly acknowledged this custom. Indeed, the Mayor Pro Tem has acknowledged the custom's adverse of effect of attracting less than qualified talent. Just as it was objectively obvious that understaffing would lead to a constitutional violation in *Shepard*, both understaffing and underfunding Lyford Police Department had the objectively obvious result of constitutional rights violations.

### *B. Failure to Train Lyford Police Officers*

An inadequate training program or a failure to train may serve as the basis for § 1983 liability when the failure to train amounts to deliberate indifference to the rights of the persons with whom the officers come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A municipality may be held liable under § 1983 based on a policy of inadequate training when the plaintiff establishes that (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *See Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1007 (E.D. Tex. 1997) (citing *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996)). A municipality **must** "train its police officers to recognize and not ignore obvious medical needs". *Nuss v. City of Seven Points*, 2020 U.S. Dist. LEXIS 197040

---

[10] Marley, R. and Cole, A. (2019 October 31) *Lyford Police Department temporarily closed* KVEO-TV. https://www.valleycentral.com/news/local-news/lyford-police-department-temporarily-closed/

*at 25 (N.D.Tex. October 21 2020) (emphasis added) (citing *Burns v. City of Galveston*, 905 F.2d 100, 104 (5th Cir. 1990)).

Here, Officer Garcia was advised that Mr. Zamora had ingested drugs and had a history of using cocaine. Officer Garcia reported that Mr. Zamora was acting erratically saying that he was being followed when he was not. Each of these points indicate obvious medical needs. All Texas peace officers receive training in crisis intervention and similar situations known as excited delirium episodes that evolve from drug use, often cocaine use.[11] However, due to inadequate training by Lyford Police Department, Officer Garcia failed to recognize Mr. Zamora's medical emergency. Instead of contacting emergency medical services, Officer Garcia focused his attention on gathering incriminating evidence.

Lyford Police Department's Police Chief failed to adequately train Officer Garcia in identifying and responding to obvious medical needs. Lyford Police Chief's training procedures regarding recognizing and responding to medical needs were inadequate. Lyford Police Chief was deliberately indifferent in adopting this inadequate training policy. The inadequate training policy directly caused Mr. Zamora's death. The need for more training in recognizing and responding to medical needs is so obvious that the Lyford Police Chief can reasonably be said to have been deliberately indifferent to the need. The inadequacy of the training for recognizing and responding to medical needs is incredibly likely to result in constitutional violations. Thus, the Lyford Police Department's inadequate training supports § 1983 liability.

---

[11] *See* Exhibit 3; Keith Howse Expert Report

3.  **Plaintiffs and Intervenor's Claims Are not Barred by Qualified Immunity Because the Right Was Clearly Established.**

The qualified immunity defense has two prongs: whether an official's conduct violated a statutory or constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 640 107 S. Ct. 3034, 3039 (1987). The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff. *Id*. at 3040; *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986); *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997).

In *Dyer*, the Court found the Officers were deliberately indifferent because they had custody of a delusional detainee who they witnessed severely harming himself, and yet did nothing to secure medical help. *Dyer v. Houston*, 964 F.3d 374, 384 (5th Cir. 2020). The court highlighted *Thompson* as outlining clearly established law giving fair warning to the Officers that their behavior was deliberately indifferent to the detainee's serious medical needs. *Id*.

In *Thompson*, the court found a jury question as to whether a jailer was objectively unreasonable, given clearly established law forbids a significant exacerbating delay or a denial of medical care to a detainee suffering from [delirium termens]. *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 463 (5th Cir. 2001).

Here, as previously discussed, Officer Garcia violated Mr. Zamora's Fourteenth

8

Amendment constitutional right to medical attention. This right was clearly established at the time of the violation. Like in *Dyer*, Mr. Garcia encountered Mr. Zamora in a delusional state. Officer Garcia was advised that Mr. Zamora had ingested drugs and had a history of using cocaine. Officer Garcia witnessed Mr. Zamora acting erratically saying that he was being followed when he was not. This information should have been enough to alert Officer Garcia to an obvious risk to Mr. Zamora's health. However, instead, Officer Garcia chose not to obtain medical help for Mr. Zamora. Cases like *Dyer* and *Thompson* make it clear that a reasonable official in Officer Garcia's position would understand that failing to obtain medical help violated Mr. Zamora's Fourteenth Amendment right to medical attention. Indeed, the Fifth Circuit has repeatedly held these circumstances to be a clear violation of a claimant's constitutional rights. *See e.g. Alderson v. Concordia Par. Corr. Facility,* 848 F.3d 415, 422-23 (5th Cir. 2017) (finding a violation when guard refused to provide prescribed antibiotics and painkillers for his broken ribs); *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam) (finding a constitutional violation when nurse refused to provide an inmate's prescribed medication for heart attacks); *Nerren v. Livingston Police Department*, 86 F.3d 469, 470-71 (5th Cir. 1996) (denying qualified immunity when officers rejected plaintiff's request for medical assistance despite knowing he was involved in a car accident). Thus, Defendants are not entitled to the qualified immunity defense.

**CONCLUSION AND PRAYER**

Summary judgment is not appropriate given the policies and customs of Defendants City of Lyford and Lyford Police Department which were the moving force behind the violations of

clearly established rights held by Mr. Zamora. Thus, Plaintiffs pray this Court deny Defendants City of Lyford and Lyford Police Department's motion for summary judgment.

Respectfully Submitted,

*/s/ Israel Garcia Perez III*
Israel Garcia Perez III
Texas Bar No. 24102349
SDTX No. 3745629
**Israel Perez Law, PLLC**
PO Box 260
Fate, Texas 75132
Phone: (972) 813-9025
Fax:    (972) 942-8935
Israel.Perez@IsraelPerezLaw.com

ATTORNEY FOR PLAINTIFFS

AND

*/s/ Yuri Rosillo Youngs*    signed with permission
Yuri Rosillo Youngs
Texas Bar No. 24102349
SDTX No. 3411417
**YOUNGS & ROSILLO LAW FIRM, P.L.L.C.**
621 S. 10th Avenue
Edinburg, Texas 78539
(956) 420-9999
yrosillo@rosillolawfirm.com

ATTORNEY FOR INTERVENOR-PLAINTIFF

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all attorneys of record via the Court's CM/ECF system on December 29, 2023.

*/s/ Israel Garcia Perez III*_____
Israel Garcia Perez III