# Howse & Associates

**PRIVATE INVESTIGATIONS & PUBLIC SAFETY CONSULTING**

| | |
|---|---|
| 99 Trophy Club Drive | (817) 988-8443 |
| Trophy Club, Texas 76262 | (817) 488-4901 (Fax) |

May 5, 2023

Mr. Israel Perez
Israel Perez Law, PLLC
P.O. Box 260
Fate, Texas  75132

      RE: Zamora Case

Dear Mr. Perez:

Enclosed is my preliminary report in the matter of Gomez, et al. v. City of Lyford, et al. in the United States District Court for the Southern District of Texas.  I have also enclosed my current CV and a case history which is incorporated into the report.  Please let me know if you have any questions.  I will update the report as necessary.

Respectfully,

*/s/ Keith A. Howse*
Keith A. Howse

**Preliminary Report in the Matter of**

**Case No. 1:2022cv00036**

**United States District Court – Southern District of Texas**

The opinions released in this report are based upon a review of the facts, as thus far presented, along with the sources listed below, concerning the incident involving Mr. John Ray Zamora and the Willacy County, Texas Sheriff's Office (WCSO), including Deputy A. Vargas, Deputy M. Silva, Deputy J. Rivas, as well as City of Lyford, Texas Police Officer Salvador Garcia and any other unidentified officers. In reaching my conclusions, I have relied upon forty-six years of professional experience in the fields of public safety and law enforcement. My professional opinions expressed within this report are based upon a reasonable degree of certainty with regard to law enforcement professional standards, practices and training.

I have also relied upon seven years of undergraduate and graduate level academic studies in the fields of police science, criminal justice, criminology and law as well as my professional experience and certifications as a master peace officer, police instructor and law enforcement executive. Attached and incorporated is a copy of my CV which further outlines my education, training and experience and attests to my qualifications to evaluate the circumstances surrounding the above matter.

I have reviewed the City of Lyford Police Department incident report, witness statements, and forensic medical findings related to the incident under review, which are items that are commonly and routinely inspected and reviewed as part of a law enforcement procedure or use of force investigation. These sources are more specifically described below.

**SOURCES & DOCUMENTATION**

The following sources and documentation were supplied, reviewed and/or analyzed during the preparation of this report:

- City of Lyford, Texas Police Department Incident Report #220017;
- Plaintiff's Original Petition;
- Original Plea in Intervention (Yvonne Zamora);
- Final Autopsy Report Prepared by Hidalgo County Forensic Center;
- Toxicology Report Prepared NMS Labs;
- Expert Report Prepared by David Turbay, MD;
- Witness Statement of Robert Reyes;
- Witness Statement of Fidel (last name not listed);
- Article Prepared by the Valley Morning Star dated 03/18/2023;
- Texas Penal Code;

- ❑ Texas Code of Criminal Procedure;
- ❑ Texas Constitution;
- ❑ United States Constitution;
- ❑ Texas Commission on Law Enforcement Course 3847;
- ❑ Texas Commission on Law Enforcement-Use of Force Lesson Plan-Intermediate Course;
- ❑ Harris County Sheriff's Office Policy 514-Excited Delirium;
- ❑ Law Enforcement Code of Ethics.

*INCIDENT SUMMARY*

On or about February 11, 2022 at approximately 11:41am, Officer Salvador Garcia of the Lyford, Texas Police Department arrived at 7342 Dario Street in Lyford in response to a 911 call. Upon arrival Officer Garcia was met by Mr. John Ray Zamora who advised Officer Garcia that he was the one who called 911. Willacy County, Texas Sheriff's Deputies M. Silva, A. Vargas, and J. Rivas also arrived at the location to serve as back-up for Officer Garcia.

Officer Garcia reported that Mr. Zamora had frantically run towards him because he thought someone was chasing him. Deputy Silva remained with Mr. Zamora while Officer Garcia approached the residence. At the home entrance, Officer Garcia encountered Ms. Yvonne Zamora, Mr. Zamora's mother. Ms. Zamora advised Officer Garcia that her son was known to use cocaine.

Officer Garcia then returned to where Deputy Silva was standing by with Mr. Zamora. Deputy Silva told Officer Garcia that Mr. Zamora admitted to ingesting drugs and there was a backpack inside the residence that contained the pills that Mr. Zamora ingested. Officer Garcia reported that he did not believe he had probable cause to seize the backpack and told Ms. Zamora to take possession of the backpack. Officer Garcia then determined that no criminal offense had occurred and cleared the scene.

Shortly after leaving the scene, Officer Garcia was advised by radio the three Willacy County deputies were involved in a struggle with Mr. Zamora at the Dario Street residence. Upon return to the residence Officer Garcia reported he observed the three deputies on the ground with Mr. Zamora and that Mr. Zamora was resisting arrest by not putting his hands behind his back. Officer Garcia then observed Ms. Zamora being irate due to the deputies' treatment of Mr. Zamora. Officer Garcia then assisted with the handcuffing of Mr. Zamora.

Officer Garcia reported he was informed by deputies they were taking Mr. Zamora into custody as well as his mother, Ms. Zamora. Deputy Rivas transported Mr. Zamora to the Willacy County Jail while Deputy Vargas transported Ms. Zamora to jail.

Officer Garcia then went inside the residence and talked to the home owner, Mr. Roque Romo, and obtained permission to obtain the backpack. Officer Garcia reported the

backpack contained drug paraphernalia along with a rolled up dollar bill that contained a white powdery substance on it.

Upon arrival at the Willacy County Jail a witness, Robert Reyes, a jail inmate trustee, observed Mr. Zamora to be in medical distress after being pepper sprayed. The witness also stated he observed deputies laughing about having pepper sprayed Mr. Zamora. Mr. Reyes then observed jail personnel were administering CPR to Mr. Zamora and that he was naked. The witness reported that he believed Mr. Zamora was deceased but that an ambulance arrived and continued CPR and transported Mr. Zamora to a hospital where he was pronounced deceased.[1]

### *SCOPE OF REVIEW*

The scope and nature of this report is to provide an independent evaluation of the conduct of Officer Garcia, Deputy Vargas, Deputy Silva and Deputy Rivas as well as the Lyford Police Department and Willacy County Sheriff's Office to determine whether their actions, training, supervision, or policies/procedures were consistent with professional standards and generally accepted practices of the law enforcement profession. The report is intended to assist the trier of fact with knowledge regarding police training, practices, policies and procedures.

### *GENERAL ANALYSES & OBSERVATIONS*

Prior to analyzing any use of force by a peace officer it is important to understand the realm in which peace officers operate. Texas peace officers, indeed all peace officers, are trained in the use of force and the use of deadly force while in the police academy and again throughout their careers during continuing education training. Peace officers are trained that any use of force must be reasonable for the circumstances and immediately necessary. Peace officers are trained their use of force or deadly force will be evaluated and reviewed based upon their agency's use of force policy and any applicable legal standards. Peace officers are trained their use of force or deadly force will be evaluated on an objectively reasonable basis from the position of a similarly trained and situated peace officer and based on information that was known to the officer at the time.[2]

Officers are trained on the Texas Constitution and the United States Constitution, with particular emphasis on the Fourth Amendment of the US Constitution which is stated below.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and

---

[1] The Incident Summary is solely provided to give the reader a general understanding of the incident and is based upon incident reports and witness statements.
[2] Graham v. Connor, 490 U.S. 386 (1989).

4

particularly describing the place to be searched, and the persons or things to be seized. [3]

Peace officers also swear an oath prior to performing official peace officer actions.

I, (name of officer), do solemnly swear (or affirm), that I will faithfully execute the duties of the office of (name of office, i.e. peace officer) of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.[4]

The law enforcement profession has adopted the Law Enforcement Code of Ethics to further guide peace officers in their duties.

Law Enforcement Code of Ethics

As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

---

[3] U.S. Const., amend. IV.
[4] Texas Constitution, Article XVI, Section 1.

particularly describing the place to be searched, and the persons or things to be seized. [3]

Peace officers also swear an oath prior to performing official peace officer actions.

> I, (name of officer), do solemnly swear (or affirm), that I will faithfully execute the duties of the office of (name of office, i.e. peace officer) of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.[4]

The law enforcement profession has adopted the Law Enforcement Code of Ethics to further guide peace officers in their duties.

Law Enforcement Code of Ethics

As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

---

[3] U.S. Const., amend. IV.
[4] Texas Constitution, Article XVI, Section 1.

particularly describing the place to be searched, and the persons or things to be seized. [3]

Peace officers also swear an oath prior to performing official peace officer actions.

> I, (name of officer), do solemnly swear (or affirm), that I will faithfully execute the duties of the office of (name of office, i.e. peace officer) of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.[4]

The law enforcement profession has adopted the Law Enforcement Code of Ethics to further guide peace officers in their duties.

Law Enforcement Code of Ethics

As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

---

[3] U.S. Const., amend. IV.
[4] Texas Constitution, Article XVI, Section 1.

> I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession… law enforcement.[5]

ANALYSIS OF THE USE OF FORCE/DEADLY FORCE AGAINST MR. JOHN RAY ZAMORA

This evaluation of the use of force/deadly force against Mr. Zamora is based upon evidence submitted thus far for review. It is extremely important to recognize that video evidence of the incident is acknowledged to exist. However, due to a pending criminal investigation of officers involved, the Willacy County District Attorney's Office has thus far declined to release the video footage. Therefore, significant and relevant evidence has been unable to be reviewed for this report. Such evidence must be reviewed in order to conduct a full and independent evaluation of the use of force by the peace officers, or other personnel involved in the incident.

Based upon the information submitted for review thus far, my observations are listed below.

Officer Salvador Garcia

Officer Garcia reported that he responded to a 911 call made by Mr. Zamora. Officer Garcia was advised that Mr. Zamora had ingested drugs and the officer was also advised by Mr. Zamora's mother, that he had a history of using cocaine. Officer Garcia also reported that Mr. Zamora was acting erratically saying that he was being followed when he was not.

Based upon my professional training and experience this is a medical emergency requiring medical and crisis intervention by law enforcement and emergency medical services (EMS) personnel. In fact, all Texas peace officers receive training in crisis intervention and similar situations known as excited delirium episodes that evolve from drug use, often cocaine use.[6]

Instead of activating a response from the local EMS, Officer Garcia continued to handle his interaction with Mr. Zamora as a criminal matter only. This is evidenced by his incident report which states he did not believe he had probable cause to obtain Mr. Zamora's backpack from his residence despite the knowledge that drugs used by Mr. Zamora were inside the backpack.[7]

There is a clear exception to the search warrant requirements when seeking to render emergency aid. Officer Garcia was either unaware of this exception or was unwilling to

---

[5] Law Enforcement Code of Ethics as adopted by the International Association of Chiefs of Police, October 1957. The Law Enforcement Code of Ethics has also been adopted by the Texas Commission on Law Enforcement.
[6] Texas Commission on Law Enforcement Course 3847.
[7] The backpack was eventually obtained after the arrest of Mr. Zamora.

investigate further at the time. Officer Garcia subsequently chose to leave the scene without taking any other action.

Because peace officers are trained to recognize situations where persons are in medical crisis, including severe reactions to drug use and possible overdose, including behavior associated with possible excited delirium syndrome, based upon my professional training and experience, it is my opinion and conclusion that Officer Garcia's failure to recognize his interaction with Mr. Zamora as an urgent medical emergency/crisis intervention matter, instead of a possible criminal matter; failure to summon immediate emergency medical assistance after responding to Mr. Zamora's 911 call for help; and failure to recognize the search warrant exception regarding emergency aid, were all actions outside the scope of generally accepted police procedures and practices and in contravention to how Texas peace officers are trained.

General Discussion of Officers' Actions On Scene

Based upon the evidence as thus far presented, the following opinions and conclusions are reported and attributed to Officer Garcia, Deputy Vargas, Deputy Silva and Deputy Rivas (Officers) in the aggregate as details as to each specific officer's actions have yet to be submitted. However, it is established that all of these officers were present during the encounter with Mr. Zamora.[8]

Plaintiff Yvonne Zamora asserts that she observed the officers using physical force against Mr. Zamora in the front yard. This force included hands-on physical force as well as use of pepper spray and Taser in order to restrain Mr. Zamora. If true, such use of force is excessive in nature and outside the scope of generally accepted police practices and procedures when attempting to provide assistance to a person who is acting aggressive due to a drug interaction. Peace officers are not trained to use punitive or excessive physical force against person's experiencing drug related medical emergencies. The official autopsy report cites the reasoning for Mr. Zamora's cause of death as follows:

> In my opinion, the cause of death in this case is a cardiac arrhythmia due to multiple drugs of abuse in a person exhibiting signs and symptoms of excited delirium syndrome. These persons end up in a sudden cardiac death and according to medical literature do not respond to CPR maneuvers.[9]

The International Association of Chiefs of Police (IACP) offers the following training and policy guidance to all peace officers.

> Law enforcement officers should be familiar with the characteristic signs and symptoms of excited delirium (ExDS) and approach situations

---

[8] Lyford Police Department Incident Report #220017.
[9] Autopsy Report for Mr. Zamora prepared by F. (Frank) P. Salinas, M.D. PA., Pathologist Hidalgo County Forensic Center.

7

involving individuals displaying these signs as medical emergencies that could result in sudden death.

• Excited delirium (ExDS) is a medical disorder that is not fully understood—there is no definitive evidence on what causes it or why some individuals who present with symptoms die.

• Individuals experiencing ExDS often exhibit constant physical activity, extreme agitation, elevated body temperature often resulting in nudity, screaming or making unintelligible noises, and excessive strength.

• In cases where death occurs, the following series of events almost always occurs:

The individual shows signs of ExDS and is under the influence of drugs or has a history of mental illness. There is a struggle with law enforcement. Some sort of force is used (physical, chemical, or electronic).ƒThe individual is restrained. The individual stops struggling, his or her breathing becomes shallow, and within minutes he or she is dead.

• Assuming the individual is not a danger to officers or others, the primary objective of law enforcement officers in these situations should be to rapidly control the individual and transfer him or her to the care of emergency medical providers.

• Emergency medical services (EMS) personnel should be requested as soon as possible if ExDS is suspected.

• Due to the potential of rapid death in these instances, law enforcement personnel must act quickly to minimize the duration of resistance and struggle with the individual, which is thought to contribute to death. Since individuals with ExDS often do not feel pain, physical takedown using a swarming technique might be preferred when an adequate number of officers are present.

• Only those restraints necessary to control the situation should be used, and the subject should be positioned in way that assists breathing, such as on his or her side.

> • As soon as the subject is controlled, EMS personnel should examine the subject and provide medical aid as necessary, to include sedation and cooling.[10]

Plaintiff Yvonne Zamora also asserts that, upon observing the officers' use of physical force against Mr. Zamora, and hearing cries from Mr. Zamora for help, she took her cell phone from her pocket and started to video the officers' actions. Plaintiff Zamora asserts an officer (unnamed) then approached her and confiscated her cell phone, and placed her in handcuffs. If true, such conduct is outside the scope of generally accepted police practices and procedures. Peace officers are trained they may not seize a cell phone without first obtaining a warrant. Peace officers are also trained that, under the First Amendment of the US Constitution, a citizen may record police officers in the performance of their duty as long as the person is not physically interfering with the police action.

> Members of the public, including media representatives, have an unambiguous First Amendment right to record officers in public places, as long as their actions do not interfere with the officer's duties or the safety of officers or others. Officers should assume that they are being recorded at all times when on duty in a public space.[11]

No evidence has thus far been presented to suggest that Ms. Zamora was interfering with the officers. Ms. Zamora asserts she was attempting to document excessive force being used against her son, Mr. Zamora.

General Discussion of Officers' Action at Willacy County Jail

According to Officer Garcia's report, Mr. Zamora was taken into custody and transported to Willacy County Jail by Deputies Vargas, Rivas and Silva. Because relevant evidence has not yet been released by Willacy County, it is not possible to completely evaluate the treatment of Mr. Zamora by deputies while he was in their custody in route to the Willacy County Jail, and upon arrival and while at the jail.

However, Plaintiff asserts Mr. Zamora was physically beaten and pepper sprayed while at the Willacy County Jail. A witness statement (non-sworn) submitted for review includes eye-witness observations of Mr. Robert Reyes, an inmate-trustee of the Willacy County Jail. Mr. Reyes stated he observed Mr. Zamora being pepper sprayed and stripped of his clothing while at the jail. Mr. Reyes also reported that he observed various deputies laughing about having sprayed Mr. Zamora with pepper spray. Mr. Reyes stated he observed deputies place Mr. Zamora in a cell and that he was left unattended for five minutes.

---

[10] A publication of the IACP Law Enforcement Policy Center, 44 Canal Center Plaza, Suite 200, Alexandria, VA 22314, April 2017.
[11] International Association of Chiefs of Police (IACP) Model Policy, Recording Police Activity, dated 12/2015.

A second witness statement (non-sworn) given by Fidel (last name not reported), also an inmate at the Willacy County Jail, stated he observed Mr. Zamora handcuffed and naked in a cell. He also observed deputies laughing about having pepper sprayed Mr. Zamora, with some deputies coughing because they had inadvertently ingested pepper spray themselves.

Both witnesses state that Mr. Zamora was subsequently found unconscious and that emergency medical procedures were started, including CPR and that 911 was called. EMS arrived and transported Mr. Zamora to Valley Baptist Medical Center where he was pronounced deceased.

If the witness statements are true, such conduct and disrespect is outside the scope of generally accepted police practices and procedures. Texas peace officers are trained they are responsible for the safety and welfare of any person in their custody. Based upon my professional training and experience and on the evidence thus far submitted, it is my opinion and conclusion that, Willacy County Jail staff, like the original arresting deputies, failed to recognize Mr. Zamora was experiencing a medical emergency requiring immediate attention.

In addition, if Mr. Zamora was handcuffed and repeatedly pepper sprayed or beaten, more likely than not, such force would be considered excessive for the circumstances. As discussed, it is critical to obtain jail video, body camera video, and officer statements in order to fully evaluate the use of force/deadly force against Mr. Zamora.

## RELEVANT TRAINING, POLICIES/PROCEDURES & SUPERVISION

In the course of my academic studies and professional career in law enforcement and public safety, over a period of forty-six years, I have had the opportunity to review several thousand incidents of officer-involved use of force/deadly force incidents for the purposes of training, policy development and case review.

When reviewing peace officer conduct it is important to consider the guidance and policies provided to them by their law enforcement agency as peace officers are trained to follow department policies and procedures in the course of their duties. In this case, there are no policies or procedures submitted for review from either the Lyford Police Department or the Willacy County Sheriff's Office.

However, based upon my professional training and experience, and based upon the evidence thus far submitted, it is my opinion and conclusion that, more likely than not, there was insufficient training, policy guidance, and/or supervision provided by the Lyford Police Department and Willacy County Sheriff's Office. Policy and procedure review is necessary to fully evaluate this issue. Failure to provide proper supervision and policy guidance can lead to the official ratification of unlawful or inappropriate officer conduct and the use of excessive force by officers.

*SUMMARY AND CONCLUSIONS*

☐      Based upon my professional training and experience and upon the information presented thus far, it is my opinion and conclusion that Officer Garcia's conduct was not objectively reasonable for the circumstances and that a reasonable, similarly trained and situated peace officer would have recognized that Mr. Zamora's 911 call was a call for help and would have immediately summoned emergency medical assistance and, that failure to do so was not within the scope of generally accepted police practices and procedures.

☐      Based upon my professional training and experience and upon the information presented thus far, it is my opinion and conclusion that the conduct of Deputies Vargas, Silva and Rivas was not objectively reasonable for the circumstances and that a reasonable, similarly trained and situated peace officer would have recognized that Mr. Zamora's 911 call was a call for help and would have immediately summoned emergency medical assistance and, that failure to do so was not within the scope of generally accepted police practices and procedures.

☐      Based upon my professional training and experience and the information presented thus far, Officer Garcia's actions during this incident were not consistent with the Law Enforcement Code of Ethics (specifically, the duty to safeguard lives; the duty to never employ unnecessary force; and the duty to be constantly mindful of the welfare of others) and it is my conclusion that such conduct is not within generally accepted police practices and procedures.

☐      Based upon my professional training and experience and the information presented thus far, the actions of Deputies Vargas, Silva and Rivas during this incident were not consistent with the Law Enforcement Code of Ethics (specifically, the duty to safeguard lives; the duty to never employ unnecessary force; and the duty to be constantly mindful of the welfare of others) and that such conduct is not within generally accepted police practices and procedures.

☐      Based upon my professional training and experience and the information submitted thus far, more likely than not, the seizing of Ms. Zamora's cell phone by unidentified officer(s) was not consistent with generally accepted police practices and procedures.

☐      Based upon my professional training and experience and the information presented thus far, the actions of the Willacy County Sheriff's Office Jail staff, during this  incident, were outside the scope of generally accepted police practices and procedures and not consistent with the Law Enforcement Code of Ethics (specifically, the duty to safeguard lives; the duty to never employ unnecessary force; and the duty to be constantly mindful of the welfare of others) and that such conduct is not within generally

accepted police practices and procedures and indicates a deliberate indifference to the safety and welfare of those persons in their custody.

My aforementioned conclusions are based on a reasonable degree of certainty, and based upon my forty-six years of law enforcement and public safety experience and training and are based upon an objectively reasonable standard taking into consideration what was known to officers involved at the time and how a reasonable, similarly trained and similarly situated peace officer would react given generally accepted training and law enforcement procedures when considering the totality of the circumstances.

I reserve the right to review, modify or update my opinions based upon the introduction or withdrawal of any information relevant to the facts presented in this case.

Respectfully submitted on May 5th, 2023.

*/s/Keith A. Howse*
Keith A. Howse

### STATEMENT OF COMPENSATION

I have charged professional consulting fees to review this case and to prepare this report. Consulting fees are charged at the rate of $150 per hour.

### DECLARATION

My name is Keith A. Howse, my date of birth is 05-09-1960 and my address is 99 Trophy Club Drive Trophy Club, Texas, United States of America. I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Tarrant County, State of Texas, on the 5th day of May 2023.

*/s/Keith A. Howse*
Keith A. Howse

# Keith A. Howse
99 Trophy Club Drive
Trophy Club, Texas 76262
(817) 988-8443

---

**Education**    Texas Wesleyan University School of Law – Fort Worth, Texas
(Now Texas A & M University School of Law)
Doctor of Jurisprudence – 1998

University of Texas at Arlington – Arlington, Texas
Bachelor of Arts in Criminology and Criminal Justice – 1995

Del Mar College – Corpus Christi, Texas
Associate of Applied Sciences in Police Science - 1980

Center for American and International Law
Institute for Law Enforcement Administration – Plano, Texas
School of Police Supervision – 1990

**Professional Experience**

Howse & Associates
99 Trophy Club Drive
Trophy Club, Texas 76262

**Principal Consultant & Investigator (2000 – Present)**
Provide professional criminal and civil investigative services for private and government clients throughout Texas. Conduct national security and public trust related background investigations on behalf of the United States Government. Provide public safety consulting services in matters of security and police practices, use of force, arrest, search and seizure, premises liability, inadequate security, and crime foreseeability. Serve as subject matter expert in State and Federal courts on issues involving law enforcement and security practices.

Baylor Department of Public Safety
3500 Gaston Avenue
Dallas, Texas (1982 - 2007)

**Director - Public Safety/Assistant Chief of Police (1997 - 2007)**
Provided direction and leadership to the 249 personnel of the Baylor Health Care System Department of Public Safety (BDPS), a special district police agency serving two urban planned development districts in Dallas, Texas known as Baylor University Medical Center, consisting of healthcare, academic, commercial, high-rise office, retail, multi-family residential, hotel, private/public parking, and special use properties. Managed comprehensive public safety program responsible for law enforcement, security, parking/traffic management, traffic safety, and emergency/fire safety planning programs. Provided senior management and budget accountability for all aspects of police and security services for 57 armed police officers and 140 unarmed security officers, plus support staff. Served as BDPS legal advisor for police and security matters. Reviewed all arrest and offense reports for accuracy and legality. Chaired Department Use of Force Review Committee. Testified before various state commissions on law enforcement related matters and monitored state legislative sessions to review proposed legislation impacting law enforcement operations.

13

**Captain of Police (1991 - 1997)**
Directed and managed personnel in the Support Services Division, including Training and Personnel, Firearms, Crime Prevention and Fire Prevention, and Security Technology Applications. Additional duties included planning and research, quality assurance and defensive driving coordinator, and community services programs. Instructed basic and in-service public safety related training programs to all DPS personnel. Served as training manager for the department and emergency management coordinator for natural and civil disasters. Approved all arrests and criminal offense reports as they related to the use of force by police and security officers.

**Lieutenant of Police (1986 - 1991)**
Managed the crime prevention and fire prevention unit as well as Parking & Traffic Division. Conducted fire/life safety inspections and educational programming. Managed recruiting and applicant testing to establish a qualified and diverse public safety workforce and conducted criminal investigations as assigned. Served as a patrol commander supervising one watch of police and public service officers. Performed as Field Training Officer for new recruits. Provided patrol services and approved all arrests and criminal offense reports.

**Corporal/Emergency Medical Technician - Field Training Officer (1985 - 1986)** Provided field training to new officers and functioned as weekend patrol supervisor. Prepared and reviewed daily incident reports and handled citizen complaints and inquiries. Performed routine patrol and first response emergency medical duties and criminal investigations as needed.

**Public Service Officer (1982 - 1985)**
Patrolled designated areas on foot and in marked patrol vehicles to deter and respond to criminal activity. Prepared detailed written reports concerning arrests and testified in court as necessary. Provided customer service such as motorist assistance, safety escorts and general assistance to members of the campus community. Served as relief dispatcher as needed.

Braniff International Airways, Inc.
Dallas-Fort Worth Airport, Texas (1981 - 1982)

Note: The company was declared bankrupt and dissolved in late 1980s.

**Lead Trainer (December 1981- March 1982)**
Provided FAA approved security training to security screeners on the recognition and detection of weapons and explosives concealed on passengers and in passenger luggage.

**Security Screener ( January 1981- December 1981)**
Screened passenger baggage for dangerous items, weapons, explosives and other prohibited materials at terminal security checkpoints.

**Current & Past Licenses and Certifications**

| | |
|---|---|
| Attorney & Counselor at Law | State Bar of Texas |
| Master Peace Officer Certification | Texas Commission on Law Enforcement |
| Advanced Peace Officer Certification | Texas Commission on Law Enforcement |
| Intermediate Peace Officer Certification | Texas Commission on Law Enforcement |
| Basic Peace Officer Certification | Texas Commission on Law Enforcement |
| Police Instructor | Texas Commission on Law Enforcement |
| Crime Prevention Inspector | Texas Commission on Law Enforcement |
| Security Manager | Texas DPS Private Security Bureau |
| Private Investigator | Texas DPS Private Security Bureau |
| Certified Protection Professional (CPP) | American Society for Industrial Security (ASIS) International |

**Professional Awards & Recognition**

Live-Saving Award
Meritorious Conduct Award
Academic Achievement Award
Director's Award
IACP National Civil Rights Recognition

**Current & Past Professional Affiliations**

American Bar Association
American Society for Industrial Security (ASIS) International
International Association of Chiefs of Police
International Association of Campus Law Enforcement Administrators
Institute for Law Enforcement Administration – Center for Law Enforcement Ethics
Texas Association of Licensed Investigators
Boy Scouts of America

**Government Security Clearances**

Top Secret (United States Department of Defense)

**Specialized Training & Continuing Education**

Basic Police Academy
    North Central Texas Council of Governments Regional Police Academy-Arlington, Texas

Crime Prevention Inspector School (Commercial Business and Residential Security Assessments)
    Texas State University (Formerly Southwest Texas State University) – San Marcos, Texas

Advanced Crime Prevention School
    Texas State University (Formerly Southwest Texas State University) – San Marcos, Texas

Crime Prevention Through Environmental Design
    University of Louisville – Louisville, Kentucky

School of Police Supervision
    Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Advanced Management College
    Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Instructor School
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Field Training Officer School
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Sex Crimes Investigation School
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Crime Scene Investigation
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Use of Force
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Child Abuse Investigation
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Presidential Protection Detail Training Program
    United States Secret Service – Austin, Texas

Arrest, Search & Seizure
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Management of Aggression, Violence, & Intoxication Instructor Program
    Texas Hospital Association – Austin, Texas

Emergency Medical Technician – Basic School
    Baylor University Medical Center – Dallas, Texas

Defensive Driving Instructor Course
    National Safety Council – Dallas, Texas

CPR Instructor Course
    American Heart Association – Dallas, Texas

Explosives Recognition & Structural Firefighting Course
    Texas Engineering Extension Service, Texas A&M – College Station, Texas

Sixth Annual International Terrorism Seminar
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Police Personnel Recruitment & Selection Course
    North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Healthcare Security & Safety Management
    American Society of Hospital Engineering – Manhattan Beach, California

NCIC/TCIC Policy and Procedures
    Texas Department of Public Safety – Austin, Texas

Family Violence Investigation
    Baylor Health Care System Police – Dallas, Texas

Police Cultural Diversity
    Baylor Health Care System – Dallas, Texas

Police Contemporary Issues Conference – Use of Force/Police Pursuit
    Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Contemporary Issues Conference – Quality Management
    Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Compstat Crime Statistics Course
    Los Angeles Police Department – Los Angeles, California

American Society for Industrial Security (ASIS) International Annual Conference
    CPP/Security Continuing Education – Las Vegas, Nevada

American Society for Industrial Security (ASIS) International Annual Conference
    CPP/Security Continuing Education – Orlando, Florida

American Society for Industrial Security (ASIS) International Annual Conference
    CPP/Security Continuing Education – San Diego, California

American Society for Industrial Security (ASIS) International Annual Conference
    CPP/Security Continuing Education – New Orleans, Louisiana

American Society for Industrial Security (ASIS) International Annual Conference
    CPP/Security Continuing Education – San Antonio, Texas

American Society for Industrial Security (ASIS) International Annual Conference
    CPP/Security Continuing Education – Dallas, Texas

International Association of Chiefs of Police Annual Conference
    Police Continuing Education – Los Angeles, California

International Association of Chiefs of Police Annual Conference
    Police Continuing Education – Salt Lake City, Utah

International Association of Chiefs of Police Annual Conference

        Police Continuing Education – Charlotte, North Carolina

International Association of Chiefs of Police Annual Conference
        Police Continuing Education – Philadelphia, Pennsylvania

International Parking Institute Annual Conference
        Parking Management Continuing Education – Las Vegas, Nevada

American Society for Industrial Security (ASIS) International Annual Conference
        CPP/Security Continuing Education – Los Angeles, California

Warrantless Searches
        State Bar of Texas – Dallas, Texas

The Right of Police to Investigate
        State Bar of Texas – Dallas, Texas

Police Excessive Force/Police Pursuit
        State Bar of Texas – Dallas, Texas

USA Patriot Act
        State Bar of Texas – Dallas, Texas

Consequence of Illegal Immigration/Guns, Drugs, Illegal Aliens
        State Bar of Texas – Dallas, Texas

White Collar Crime Within the Healthcare Industry
        State Bar of Texas – Dallas, Texas

White Collar Crime and Federal Investigations
        State Bar of Texas – Dallas, Texas

Internet and Computer Crimes
        State Bar of Texas – Dallas, Texas

Police Training & Governmental Liability
        State Bar of Texas – Dallas, Texas

DWI & Breath and Blood Testing
        State Bar of Texas – Dallas, Texas

Police Practices – Arrest, Search & Seizure
        State Bar of Texas – Dallas, Texas

Immigration Law Enforcement
        State Bar of Texas – Dallas, Texas

Prosecution of Criminal Cases in a Corporate Environment
        State Bar of Texas – Dallas, Texas

Crime Scenes & Prosecutions
        State Bar of Texas – Dallas, Texas

Arrest, Search & Seizure – US Supreme Court Update
        State Bar of Texas

National Training Standards for Federal Background Investigators
    Keypoint Government Solutions – Loveland, Colorado

Human Trafficking
    Texas Commission on Law Enforcement – Austin, Texas

Advanced Human Trafficking
    OSS Academy – Austin, Texas

Legal Update
    Texas Commission on Law Enforcement – Austin, Texas

Open Carry Law Update
    Texas Commission on Law Enforcement – Austin, Texas

Civil Disturbance & Riot Control
    OSS Academy – Austin, Texas

Recording Law Enforcement Actions
    OSS Academy – Austin, Texas

Eyewitness Evidence
    OSS Academy – Austin, Texas

De-Escalation of Force
    OSS Academy – Austin, Texas

Negotiator Tactics
    OSS Academy – Austin, Texas

Psychological Evaluations in Criminal & Civil Cases
    State Bar of Texas – Austin, Texas

Use of Deadly Force in Texas
    State Bar of Texas – Austin, Texas

Fourth Amendment Legislative Update
    State Bar of Texas – Austin, Texas

Use of Force: Police Perspective
    State Bar of Texas – Austin, Texas

Human Trafficking & the Criminal Justice System
    State Bar of Texas – Austin, Texas

Illegal Evidence: Wiretapping/Hacking & Data Interception
    State Bar of Texas – Austin, Texas

Electronic Control Device-Basics
    OSS Academy-Austin, Texas

Recent Case History – Keith A. Howse

The following represents the cases in which I have testified in court or by deposition as an expert in the last four years.

Barbara Coats, et al. v. Harris County, et al. Houston, Texas (2017) – 61st Judicial District Court – Harris County, Texas – Cause No. 2012-55551 – Police Procedure - Police Training –Use of Deadly Force

Parker v. Briggs of De Gaulle, Inc., New Orleans, Louisiana (2017) – Civil District Court for the Parish of Orleans – Cause 2011-4030 – Security Procedure

Flowers v. JKS Security, et al. Dallas, Texas (2018) – 162nd Judicial District Court – Dallas County, Texas – Cause No. DC-16-09855 – Police Procedure-Security Procedure

Ruda v. State of New Jersey, et al. – Superior Court of New Jersey-Somerset County Division, New Jersey, (2020) - Docket No. SOM-L-533-17 – Security Practice & Procedure

Holman v. Harris County, et al. – Houston, Texas (2019) – United States District Court, Southern District of Texas-Houston Division-Civil Action 4:17-CV-01745 – Police Procedure-Use of Force

Ida Renae Nobles, et al. v. Sergeant Richard Egal, et al. – Austin, Texas (2021) United States District Court, Western District of Texas-Austin Division – Civil Action 1:19-CV-00389 – Police Procedure-Use of Deadly Force

Stephen Bryant III v. Galveston County, Texas, et al. – Galveston, Texas (2022) United States District Court, Southern District of Texas, Galveston Division – Civil Action No.:3:20-CV-374 – Police Procedure-Use of Force